UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

EDMUND CARUSO,
                                            Plaintiff,

v.                                                                            5:05-CV-851
                                                                            (NAM/GHL)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]
                                            Defendant.

APPEARANCES:                                                          OF COUNSEL:

OLINSKY, SHURTLIFF LAW FIRM                HOWARD OLINSKY, ESQ.
*Counsel for Plaintiff*
300 S. State Street
5th Floor
Syracuse, New York 13202

HON. GLENN T. SUDDABY                          WILLIAM H. PEASE, ESQ.
United States Attorney for the                        Assistant United States Attorney
 Northern District of New York
*Counsel for Defendant*
100 South Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[2]

**I.**       **BACKGROUND**

       **A.**       **Procedural History**

Plaintiff filed an application for disability insurance benefits ("DIB") on February 27,

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit for Jo Anne B. Barnhart.

[2] This matter was referred to me for report and recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

2002. (Administrative Transcript ("T") at 61-63, Dkt. No. 6) The application was denied initially. (T. at 36-39.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on September 8, 2003. (T. at 327-51.) On October 8, 2003, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 14-21.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 19, 2005. (T. at 5-8.) Plaintiff commenced this action on July 8, 2005. (Dkt. No. 1.)

    **B.**    **The Contentions**

Plaintiff makes the following claims:

(1)    The Commissioner erred in failing to give controlling weight to the opinion of a treating source. (Dkt. No. 9 at 12-14.)

(2)    The Commissioner erred in determining that jobs existed in sufficient numbers in the national and regional economy that the Plaintiff could perform because the vocational expert ("VE") was given an improper hypothetical and consistency with the Dictionary of Occupational Titles ("DOT") was not ensured. (Dkt. No. 9 at 14-16.)

(3)    The Commissioner erred in finding that the Plaintiff's subjective complaints were not fully credible. (Dkt. No. 9 at 16-19.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed. Dkt. No. 10.

**II.**    **APPLICABLE LAW**

    **A.**    **Standard for Benefits**

To be considered disabled, a plaintiff seeking disability insurance benefits or

supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2005).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment

> is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

    **B.**    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d

Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III. THE PLAINTIFF

Plaintiff was forty-six years old at the time the ALJ rendered his decision. (T. at 61.) He received a General Educational Development ("GED") diploma and previously worked as a drywall and sheetrock applicator and truck driver. (T. at 15, 67, 72, 121, 335.) Plaintiff alleges disability due to back, neck, knee, and elbow conditions and hearing loss. (Dkt. No. 9 at 2.)

**IV.     THE ALJ'S DECISION**

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the alleged onset date; (2) Plaintiff had severe "cervical degenerative disc disease, s/p lumbar laminectomy, and bilateral hearing loss," but they did not meet or equal a listed impairment; (3) Plaintiff's allegations of disabling symptoms were not fully credible; (4) Plaintiff had the residual functional capacity ("RFC") to perform the requirements of sedentary work, except that he could not perform work involving overhead tasks, repetitive bending and stooping, proximity to dangerous machinery, climbing at unprotected heights, and more than occasional interaction with the general public; (5) Plaintiff could not perform his past relevant work as a drywall and sheetrock installer and truck driver; and (6) using the testimony of a vocational expert as well as Medical-Vocational Rules 201.28 and 201.21, there were a significant number of jobs in the national economy that Plaintiff could have performed, thus he was not disabled.  (T. at 20-21.)

**V.     DISCUSSION**

    **A.     Whether the Commissioner Erred by Failing to Determine That the Opinion of Plaintiff's Treating Physician Was Entitled to Controlling Weight**

Plaintiff argues that in discussing the medical evidence, the ALJ erred by failing to mention the weight to be given to any of the medical opinions, let alone that of his treating physician, Dr. Harold Weichert.  (Dkt. No. 9 at 12-14.)  Plaintiff further argues that Dr. Weichert's opinion should have been given controlling weight.  (*Id.*)  Defendant contends that the ALJ's findings are supported by substantial evidence and should be affirmed.  (Dkt. No. 10 at 10-13.)

The medical opinions of a treating physician[3] are to be given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. § 404.1527(d)(2) (2005). In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

*Halloran v. Barnhart*, 362 F.3d at 32.

However, "[a]n ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Id.* These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2) (2005).

Plaintiff argues that the ALJ failed to evaluate the opinion of his treating physician, Dr.

---

[3] "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant. 20 C.F.R. § 404.1502 (2005).

Weichert, as well as the opinions of other medical sources. In addition, Plaintiff contends that Dr. Weichert's opinion is well-supported by and is not inconsistent with substantial medical evidence in the record and thus, the ALJ should have accorded his opinion controlling weight.

As stated above, an ALJ may give less than controlling weight to a treating physician, provided that the ALJ explains his decision. *Kearney v. Barnhart*, Civ. No. 05-1860, 2006 WL 1025307, at *7 (E.D.N.Y. Apr. 17, 2006); *see also* 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating sources' opinion."). In the instant case, the ALJ's decision fails to state whether he gave any weight to the opinion of Dr. Weichert, and if he did give the opinion some weight, what that weight was. *See Caserto v. Barnhart*, 309 F. Supp. 2d 435, 444-45 (E.D.N.Y. 2004) (citing *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) for the proposition that "the ALJ is required to articulate the weight that is given to treating doctor's conclusions"). Furthermore, although the ALJ listed some of Plaintiff's visits with Dr. Weichert, the ALJ did not discuss any of the factors set forth in 20 C.F.R. § 404.1527(d)(2). For example, the ALJ failed to discuss the length of Plaintiff's treatment relationship and the frequency of examinations. Additionally, the ALJ did not discuss the nature and extent of Plaintiff's treatment relationship with Dr. Weichert nor whether his opinion was supported or consistent with the record as a whole.

In *Rivera v. Barnhart*, the Court found that despite the ALJ's "detailed reason for not giving Dr. Romero's opinion controlling weight, the ALJ failed to follow the regulation's requirements. First the regulation states that '[w]hen we do not give the treating sources's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.'" *Rivera v. Barnhart*, Civ. No. 04-6149, 2005 WL 3555501, at *8 (W.D.N.Y. Dec. 9,

2005); *see also Kearney*, 2006 WL 1025307, at *7 (remanding the matter because the ALJ had an obligation to apply the treating physician rule, but failed to do so, and did not explain her decision not to give the treating physician's opinion controlling weight); *Rivera v. Barnhart*, Civ. No. 03-10127, 2006 WL 786844, at *6 (S.D.N.Y. Mar. 27, 2006) (remanding the matter for the ALJ's failure to "explain his reasons for rejecting [the treating physician's] opinion and crediting instead that of the medical consultant") (citing 20 C.F.R. § 404.1527(d)(2)).

Similarly, in this case, the ALJ did not discuss all of the factors set forth in 20 C.F.R. § 404.1527(d)(2) and the ALJ failed to specifically state what weight, if any, he gave to the opinion of Plaintiff's treating source. Moreover, not only did the ALJ fail to address the weight of the treating source, but there is no mention of any weight given to any medical opinion, although it can be inferred from his decision that he significantly relied upon the opinion of state agency consultative examiner, Dr. Kalyani Ganesh. Accordingly, remand is recommended.

**B.     Whether the Commissioner Met His Burden of Proof at Step 5 of the Sequential Analysis in Finding That Other Work Exists in Significant Numbers in the National Economy That the Claimant Can Still Perform Based on the Hypothetical Presented**

Plaintiff argues that even though the vocational expert testified that jobs existed in the national and regional economy that Plaintiff could perform, such testimony was based on a faulty hypothetical. (Dkt. No. 9 at 14-16.) Plaintiff further claims that the ALJ failed to ensure that the jobs listed by the vocational expert were consistent with the Dictionary of Occupational Titles. (*Id.*) Defendant states that the Commissioner's finding that jobs existed in significant numbers in the national economy is supported by substantial evidence. (Dkt. No. 10 at 13-14.)

When the testimony of a vocational expert is utilized, as was here, the ALJ must present a

hypothetical that incorporates all of Plaintiff's impairments. *Juleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002) (quoting *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir. 1992) for the proposition that "the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments"). If the ALJ fails to pose hypothetical questions that "include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Id.* (citing *Morse v. Shalala*, 16 F.3d. 865, 874 (8th Cir. 1994)).

In this case, Plaintiff specifically argues that the hypothetical failed to accurately reflect his limitations in regard to lifting and bending as described by Dr. Weichert. (Dkt. No. 9 at 15-16.) In presenting the hypothetical to the vocational expert, the ALJ asked the VE to assume a person could do sedentary work as defined in the regulations[4] but the individual could not engage in overhead work, repetitive bending and stooping, climbing or working around unprotected heights or dangerous machinery, and interacting more than occasionally with the general public. (T. at 347-48.) In his hypothetical the ALJ restricted Plaintiff to lifting no more than ten pounds and avoiding repetitive bending, although Dr. Weichert opined on several occasions that Plaintiff should refrain from lifting and bending. (*See* T. 145, 185, 191-92, 194, 263-64.)[5] However, even

---

[4] Sedentary work involves:
> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

[5] Some of Dr. Weichert's opinions that Plaintiff should avoid lifting and bending were rendered relatively soon after he underwent surgery for his back in March 2000. (*See* T. 145-52, 191).

though the ALJ failed to assign weight to Dr. Weichert's opinion, substantial evidence supports the limitations set forth by the ALJ in regards to lifting and bending.

In November 2000, Dr. Jalal Sadrieh stated that Plaintiff could not perform work that required lifting more than twenty to twenty-five pounds or bending. (T. at 227.) In April 2001, state consultative examiner Dr. Kalyani Ganesh found that Plaintiff's gait and station were normal, squat was full, he could heel and toe walk without difficulty, and there was full flexion, lateral flexion, and extension of the thoracic and lumbar spines although there was limited range of motion and tenderness in the cervical spine. (T. at 198-99). Dr. Ganesh opined that Plaintiff had only a moderate degree of limitation to lifting and repetitive bending. (T. at 200). Subsequently, in January 2002, a functional capacity evaluation was completed and it was noted that Plaintiff was able to lift in the light category of work as described by U.S. Department of Labor standards.[6] (T. at 244.) It was further noted that Plaintiff tolerated repetitive bending. (*Id.*) In February and March 2002, vocational counselor Scott C. Brazie concluded that Plaintiff "demonstrated the ability to work in the light duty range for an 8-hour day." (T. at 120, 131.) Thereafter, in April 2002, state consultative examiner Dr. Berton Shayevitz opined that Plaintiff's gait and station were normal, squat was ninety percent, and there was full flexion, lateral flexion, and extension of the thoracic and lumbar spines although there was limited range

---

[6] Light work is defined by the CFR as:
> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R §404.1567(b).

of motion in the cervical spine. (T. at 277). Dr. Shayevitz concluded, like Dr. Ganesh, that Plaintiff had moderate degrees of limitation of lifting and bending. (T. at 278).

In addition to this evidence, Dr. Weichert stated that Plaintiff should attend physical therapy to improve his condition and on December 12, 2001, Dr. Weichert also stated that Plaintiff was neurologically intact in both the upper and lower extremities and station, stance, and gait were normal. (T. at 187, 189-90, 193, 259-60.) Plaintiff further testified that he exercises, occasionally drives, is able to dress, bathe, and take care of his personal needs except for his feet, and he can lift approximately seven to ten pounds.[7] (T. at 336-37

While it is evident that Plaintiff has limitations in the areas of lifting and bending, the evidence establishes that he is not entirely precluded from such activities. Moreover, even if Plaintiff were to argue that some of the medical evidence supports Dr. Weichert's limitations, "[w]here there is substantial evidence to support either position, the determination is one to be made by the factfinder[,]" the ALJ. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (citing, *inter alia*, *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988)). Thus, the ALJ's finding to limit Plaintiff to lifting no more than ten pounds and refrain from repetitive bending was not in error.

Notwithstanding, Plaintiff additionally contends that the jobs listed by the vocational expert were inconsistent with the Dictionary of Occupational Titles ("DOT") and the hypothetical presented. In regards to the DOT, if "there is an apparent unresolved conflict between VE [] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE [] evidence to support a determination or decision about

---

[7] Moreover, in April 2001, he reported to Dr. Khalid Siddiqui that he had been "working out in the woods[,]" as a result of which he developed poison ivy. (T. at 238.)

12

whether the claimant is disabled." S.S.R. 00-4p, 2000 WL 1898704, at *2, *Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions* (S.S.A. 2000).  A reasonable explanation may be derived from "other reliable publications, information obtained directly from employers, or from a VE's [] experience in job placement or career counseling." *Id.*  If an ALJ fails, however, to follow the confines of S.S.R. 00-4p, such an error would be harmless so long as there was "no conflict between the expert's opinion and the *Dictionary of Occupational Titles*." *Allen v. Astrue*, No. 6:05-CV-0101, 2008 WL 660510, at *10 (N.D.N.Y. Mar. 10, 2008) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1154, n. 19 (9th Cir. 2007)).

    Here, the vocational expert testified about three possible jobs that exist in the national and regional economy that Plaintiff could perform, final assembler for optical goods, bench hand assembler, and escort vehicle driver.  (T. at 349-50.)  In explaining the available jobs, the VE identified their DOT codes and classified all three as sedentary and unskilled in nature.  (*Id.*)  Within the ALJ's decision, he noted that the VE testified that these jobs were consistent with those listed in the DOT.  (T. at 20.)  However, the VE did not specifically state nor did the ALJ question whether the jobs were in fact consistent with the DOT.  (T. at 349-50.)

    In the instant case, while the VE's testimony that the job of final assembler for optical goods, bench hand assembler, and escort vehicle driver were classified as unskilled and usually performed at a sedentary exertional level is consistent with the relevant portions of the DOT, a discrepancy arises between the VE's testimony, the DOT, and the hypothetical.  *See Dictionary of Occupational Titles,* 713.687-018, 1991 WL 679271, 715.684-026, 1991 WL 679344, 919.663-022, 1991 WL 687886.  Specifically, the ALJ stated that there was to be no repetitive

overhead tasks.  However, according to the DOT, the three occupations discussed all require either constant or frequent reaching.[8]  (*Id.*)  This does not conform to the hypothetical presented and does not reflect occupations from the DOT that could be performed by Plaintiff.  As such, there is a conflict between the VE's testimony and the DOT.  Therefore, remand is recommended on this issue.

   **C. Whether the Commissioner Erred in Finding That the Plaintiff's Subjective Complaints Were Not Fully Credible**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2005); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).  First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. § 404.1529(a) (2005).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the

---

[8] The remaining descriptions of the occupations are consistent with the hypothetical presented. *See DOT*, 713.687-018, 1991 WL 679271, 715.684-026, 1991 WL 679344, 919.663-022, 1991 WL 687886.

extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c) (2005).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3) (2005). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

In his decision, the ALJ stated that plaintiff was "less than fully credible in large part because he has provided conflicting information." (T. at 17.) Since the ALJ found that Plaintiff's allegations of disabling symptoms and limitations were not fully credible (T. at 17-18), it was incumbent on the ALJ to then assess the factors set forth in 20 C.F.R. § 404.1529(c)(3), which he

15

failed to do.[9] Although the ALJ discussed Plaintiff's daily activities and a functional capacity test taken, he disregarded the remaining factors. The ALJ failed to consider the medications Plaintiff took, the treatment he received, his symptoms, and measures taken to relieve the symptoms. (*Id.*) Thus, the ALJ's findings are not entitled to deference and the Court recommends remand on this ground.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[10] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: April 21, 2008
         Syracuse, New York

*/s/ George H. Lowe*
George H. Lowe
United States Magistrate Judge

---

[9] Moreover, even though the ALJ found Plaintiff's testimony was less than credible, he never specifically stated whether Plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged[,]" as required. 20 C.F.R. § 404.1529(a).

[10] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2005).